UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALONZO SHAFFER,

        Plaintiff,                                    Hon. Paul L. Maloney

v.                                                 Case No. 1:22-cv-1221

CODY GILMAN, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Alonzo Shaffer filed a pro se complaint on December 22, 2022, pursuant to 42 U.S.C. § 1983 against several Defendants, alleging claims based on a domestic disturbance that occurred on December 4, 2022, in Kalamazoo County. (ECF No. 1.) Shaffer was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Construed liberally, the complaint alleges claims for wrongful arrest, excessive force, and deliberate indifference to Shaffer's serious medical need. The remaining Defendants are Deputy Cody Gilman, Kalamazoo County, and Kalamazoo County Office of Administrator.

Defendants have filed a Motion for Summary Judgment or, alternatively, to Dismiss for Failure to Prosecute. (ECF No. 62.) Shaffer has failed to respond within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). Pursuant to 28 U.S.C. §

636(b)(1)(B), having conducted the required review, I recommend that the Court **GRANT** Defendants' motion and dismiss Shaffer's complaint **with prejudice**.[1]

## I. Background

On December 4, 2022, at 6:45 p.m., Shaffer called 911 asking that police officers remove someone from his house who was attacking him. During the call, Shaffer became agitated with the 911 dispatcher, asked for his name and badge number, and hung up. (ECF No. 62-4; ECF No. 62-9 (audio of first 911 call).) Shaffer called 911 again and told a different dispatcher that his "stepdaughter" had assaulted him with a knife. (ECF No. 62-9 (audio of second 911 call).) Defendant Deputy Gilman was dispatched to 3051 Crystal Lane, Apt. 101 to follow up on Schaffer's 911 call. (ECF No. 62-5 at PageID.263.) The events that occurred following Deputy Gilman's arrival at the premises are depicted on video from Deputy Gillman's body camera and from Deputy Kirkey's body camera. (ECF No. 62-9 (Exs. J and L).)

When Deputy Gilman arrived at the apartment, Shaffer let him inside. Shaffer's teenage stepdaughter initially appeared at the top of the stairs but returned to her room at Gilman's request. Gilman proceeded to the living room, where Shaffer and Malikah Stevenson—the teenager's mother and Shaffer's significant other—were located. Deputy Gillman asked Shaffer, who was agitated, to "just talk" and tell him what had occurred. Shaffer said that he told the teenager that her "pussy stinks" because she had an infection and needed to go to the doctor. He

---

[1] Although Shaffer is proceeding pro se, he is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley*, No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court"). Rather than filing a response to Defendants' motion, Shaffer filed motions: (1) to expedite the proceedings (ECF No. 68); (2) for federal protection (ECF No. 70); and (3) for a writ of mandamus directed to Kalamazoo County Court Systems. (ECF No. 71.) These motions, which are in no way responsive to Defendants' motion, have been denied by a separate order.

said that they "exchanged words" and the teenager struck him with a cane, a broomstick, and a knife. Shaffer said that he wanted to press charges and have the teenager removed from the home.

Stevenson and Shaffer began to argue, and Deputy Gilman turned his attention to the teenager, who had come out of her room. She told Deputy Gilman that when she went downstairs to get something in the kitchen, Shaffer began yelling offensive things about her genitalia. She said that Shaffer's comments indicated that he intended to put his hands on her. She then went into the hallway, picked up Shaffer's cane, and swung it at Shaffer, hitting him one time on the left shoulder. She said that Shaffer responded by putting his hands on her neck and squeezing it for about 10-20 seconds. She could not breathe during that time and complained of pain in her neck. She eventually broke free from Shaffer's grip and retrieved a knife and went back into the hallway. By that time, Stevenson had put herself between the two to prevent the fight from continuing. The teenager said that she threw the knife at the wall next to Shaffer but did not intend to hit him. She then picked up a broom and threw it towards Shaffer, but it also did not hit him. (ECF No. 62-5 at PageID.263; ECF No. 62-9 (video Ex. J).)

While Deputy Gilman was interviewing the teenager, Michigan State Trooper Larnell Hill entered the apartment and tried to calm Shaffer and Stevenson. Deputy Gilman convinced Shaffer to exit the apartment with Trooper Hill and then began to interview Stevenson. Stevenson said that she and Shaffer used to be a couple, but they had issues so they recently "split up." Shaffer had entered the apartment using a key she did not know he had. She told Deputy Gilman that Shaffer had instigated the argument with the teenager. Soon after it began, she left the living room to use the bathroom. When she returned, she "jumped in the middle" of the argument. She said that her daughter swung the cane, but it did not hit Shaffer. She did not

3

see Shaffer touch the teenager. She saw the teenager retrieve a knife and throw it at Shaffer, but it did not hit him. She said that the teenager had also thrown the broomstick at Shaffer but did not hit him either. (ECF No. 62-5 at ageID.264; ECF No. 62-9 (video Ex. J).)

Deputy Gilman left the apartment and interviewed Shaffer a second time while Trooper Hill was present. Shaffer showed Deputy Gilman a small scuff on his arm, which he said was caused by the cane. Shaffer said that the teenager came at him with the knife, but he used "martial arts" to dodge the knife. Shaffer said that at that point he thought about taking the knife and "fuck[ing] her ass up and show her that she can't do that to people." Shaffer denied touching the teenager, but he did admit trying to grab her by the arms and trying to pin her against the wall. Deputy Gilman determined that he would submit a charge against the teenager to the prosecutor. (ECF No. 62-5 at PageID.268; ECF No. 62-9 (video Ex. J).)

Deputy Gilman informed Shaffer that he was being arrested for domestic assault and handcuffed Shaffer. After Deputy Gilman double locked the handcuffs, Shaffer began to scream and sank to the ground crying. Deputy Gilman tried to calm Shaffer, and he and Trooper Hill assisted Shaffer to his feet and walked him to the patrol SUV. As they reached the SUV, Deputy Gilman asked Shaffer to "step up here" to the SUV. Shaffer became agitated and refused to get into the vehicle by trying to pull away. The officers held Shaffer against the vehicle and searched his pockets as he yelled that they were endangering him. Deputy Gilman instructed Shaffer several times to "take a seat" in the SUV, but Shaffer refused. Deputy Gilman told Shaffer that if he did not get into the SUV, they would have to put him inside. Shaffer responded that they would have to put him in "against [his] will." The officers then forced Shaffer into the SUV, and Trooper Hill went to the other side of the vehicle to pull Shaffer inside. Shaffer complained that he hit his head.

Once inside the SUV, Shaffer said that he was going to have a seizure. He began acting erratically and asking, "what's going on?" After the officers shut the door, Shaffer began to cough, spit, and thrash about. Deputy Gilman opened the door to observe Shaffer. Sergeant Michael Hill, who had been nearby in his patrol car, responded to the scene when he heard Shaffer's name over the radio because he had previously dealt with Shaffer. Sergeant Hill observed Shaffer inside the SUV. Although he determined that Shaffer's actions were inconsistent with a seizure, he erred on the side of caution and radioed for an ambulance. (ECF No. 62-8 at PageID.285.) After several minutes, Shaffer calmed down and began to talk. He demanded that they take him to the emergency room. Shaffer tried to exit the SUV by kicking his legs outside the vehicle, but Deputy Gilman put his hand on Shaffer's chest and told him to relax and that he was fine. The officers rearranged Shaffer in the vehicle and shut the doors. Shaffer calmed down but eventually became combative. Based on their observations, Deputy Gilman and Sergeant Hill determined that Shaffer did not need emergency treatment and could be transported to the jail, where he could receive medical care. (ECF No. 62-3 at PageID.252; ECF No. 62-8 at PageID.285; ECF No. 62-9 (video Ex. K).)

On the way to the way to the jail, Shaffer continued to demand to be taken to the emergency room to "get [his] seizure checked out." Later, although Shaffer continued to complain about hitting his head on the doorframe, he admitted that he refused to get into the SUV because he did not want to go to jail. Deputy Gilman denied pushing Shaffer's head into the car.

When they arrived at the jail, Shaffer again demanded medical attention for his headache and seizure. Deputy Gilman prepared the booking form and asked Shaffer if he had any medical conditions that jail personnel should know about. Shaffer said that he experienced "seizures,"

which Deputy Gilman noted on the form. (ECF No. 62-7 at PageID.279; ECF No. 92-9 (video Ex. K).) Deputy Gilman briefed the corrections officers about the incident and told them that Shaffer seemed fine. Shaffer then exited the SUV and got into a wheelchair. (*Id.*)

## II. Discussion

### A. Failure to Prosecute

In addition, or alternatively, to summary judgment, Defendants contend that the Court should dismiss this action for failure to prosecute and/or failure to comply with the Court's order. The argument has merit.

On July 18, 2023, I issued an order granting Defendants' motion to compel and directing Shaffer to respond to Defendants' discovery requests, including interrogatories, request for production of documents, and request for admissions, within 14 days. The order warned Shaffer that his lack of compliance could result in sanctions under rule 37(b), up to and including dismissal with prejudice and/or dismissal under Rule 41(b) for failure to prosecute. (ECF No. 51 at PageID.182.) With the exception of one medical record, Shaffer failed to provide responses to the discovery requests. (ECF No. 62-2 at PageID.238.)

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), a court may impose various sanctions against a party for failure to obey a discovery order, including dismissal of an action. Likewise, Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." *See Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008). Before dismissing an action under either rule, a court must consider the following factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

6

*Id.* at 737 (applying factors in Rule 41(b) context); *see also United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (noting that the same four factors are considered under both Rule 37(b)(2) and Rule 41(b)).

All of these factors weigh in favor of dismissal. Regarding the first factor, the party seeking to avoid sanctions bears the burden of showing that his failure to comply was due to inability rather than willfulness or bad faith. *Id.* As noted, Shaffer was warned that his failure to provide discovery responses could result in dismissal. Shaffer had ample opportunity to comply. Moreover, he has failed to respond to the instant motion, ignoring his opportunity to show that his failure was due to inability, rather than willfulness or bad faith.

The second factor is satisfied if the defendant was "required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013) (internal quotation marks omitted). Here, Defendants have been prejudiced by Shaffer's failure to provide discovery requests. Based on his lack of response, Defendants were required to file a motion to compel but still failed to obtain the requested discovery.

The other factors also favor dismissal. As set forth above, Shaffer was warned that his failure to comply with the July 18, 2023 Order could result in his dismissal. Last, given Shaffer's previous lack of compliance and his failure to respond to the instant motion, it reasonably appears that no sanction short of dismissal would cure his failure to comply/prosecute this action.

Accordingly, I recommend that the Court consider dismissal under Rule 37(b) and/or 41(b) as additional bases for dismissal.

### B. Motion for Summary Judgment

#### 1. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

#### 2. Qualified Immunity

Deputy Gilman contends that he is entitled to qualified immunity on all of Schaffer's claims. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude

either that no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. Here, qualified immunity can be resolved on the first step as to each claim.

### a. Wrongful arrest

"In order for a wrongful arrest claim to succeed under Section 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). A police officer has probable cause to make an arrest "if the facts and circumstances within [his] knowledge were 'sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.'" *Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In determining whether there is probable cause to make an arrest, an officer must consider the "totality of the circumstances" and cannot "look only at the evidence of guilt while ignoring all exculpatory evidence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). "[S]tate law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 215 (6th Cir. 2011).

Deputy Gilman arrested Shaffer for domestic assault by strangulation. Mich. Comp. Laws § 750.84. The statute makes it a felony for a person to "assault[] another person by strangulation or suffocation." Mich. Comp. Laws 750.84(1)(b). The term "strangulation or suffocation" means "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." Mich. Comp. Laws § 750.84(2). Here, Shaffer's stepdaughter told Deputy Gilman that Shaffer had placed his hands around her neck for 10-20 seconds and that she could not breath during that time. Although

Deputy Gilman did not observe visible evidence of strangulation, "outward signs of strangulation are only seen in approximately half of strangulation cases." *People v. Watson*, No. 356971, 2022 WL 2379323, at *3 (Mich. Ct. App. June 30, 2022) (internal quotation marks omitted). Shaffer denied touching his stepdaughter, and Stevenson said that she did not see Shaffer touch her, although her statement was somewhat equivocal. However, Shaffer admitted that he attempted to grab his stepdaughter. In any event, given the teenager's allegations, Deputy Gilman had sufficient basis to believe that Shaffer had committed a crime. *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) (a victim's statement that she had been abused provides sufficient probable cause) (citing *Klein v. Long*, 275 F.3d 544, 551–52 (6th Cir. 2001) (holding that "a victim's accusation that she had been sexually assaulted by the plaintiff, standing alone, [can be] sufficient to establish probable cause" and explaining that officers need not interview an alleged offender where a victim claims that she was abused if such an interview would, at most, produce an exculpatory denial of wrongdoing)). Therefore, Deputy Gilman is entitled to summary judgment on this claim.

      b.  **Excessive Force**

Shaffer alleges that Deputy Gilman used force in an excessive manner in effecting the arrest and placing him in the SUV. An excessive force claim must be analyzed under the Fourth Amendment's standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). This standard must be applied in light of the reality that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 397. Thus, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. In determining whether an officer's actions were reasonable, the court must examine the specific facts of the case. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th

Cir. 2001). Factors that bear on the issue are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is cooperating or is actively resisting arrest or attempting to flee. *Id.* The test is "fact specific, not mechanical[.]" *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008).

Application of the *Graham* factors demonstrates that no reasonable jury could conclude that Deputy Gilman used excessive force on Shaffer. First, the alleged offense, which amounts to domestic violence, weighs in favor of Deputy Gilman because of its nature. Often in such situations, tensions run high, and emotions can be out of control. As the video evidence demonstrates, some force was necessary to effect the arrest. The second factor is somewhat neutral, as Shaffer did not pose an immediate threat to the officers or others, but the officers still needed to handcuff him and place him in the SUV.

The final factor weighs in favor of Deputy Gilman. First, Shaffer became verbally abusive and passively resisted by falling to his knees after he was handcuffed. However, the video evidence shows that Deputy Gilman and Trooper Hill used minimal force in assisting Shaffer to his feet and then walked him to the patrol vehicle. At the SUV, Shaffer began to actively resist getting into the SUV. Active resistance generally arises "where the suspect causes the officers to be exposed to volatility, hostility, and danger in a way that increases with the passage of time, thus justifying (and often requiring) the use of force." *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) (citing *Lawrence v. Bloomfield Twp.*, 313 F. App'x 743 (6th Cir. 2008)). Some force was required to get Shaffer into the SUV and to keep him from exiting once he was inside. The video evidence is not entirely clear, but Deputy Gilman and Sergeant Hill both confirm that Deputy Gilman did not ram Shaffer's head into the SUV. (ECF No. 62-3 at PageID.251; ECF No. 62-8 at PageID.285.) Shaffer, of course, has

11

presented no evidence that the officers used excessive force. Even if Shaffer's head did hit the SUV, that occurred only because Shaffer's resistance compelled Deputy Gilman to apply reasonable force in order to get Shaffer into the SUV after refused to do so voluntarily. Without contrary evidence from Shaffer, Deputy Gilman has shown that his use of force was reasonable.

### c. Medical Treatment

Last, Shaffer appears to allege that Deputy Gilman failed to provide him adequate medical care. An arrestee or pretrial detainee has a Fourteenth Amendment right to medical treatment that is analogous to a prisoner's right under the Eighth Amendment. *Colson v. City of Alcoa*, 37 F. 4th 1182, 1188–89 (6th Cir. 2022); *Jackson v. Wilkins*, 517 F. App'x 311, 317 (6th Cir. 2013) (citing *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012)). To prove that he was deprived of that right, Shaffer must demonstrate that Deputy Gilman acted with "deliberate indifference to serious medical needs." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (internal quotations omitted).

In these circumstances, a deliberate indifference claim requires proof of the following: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular officer knew at the time of the incident) would have understood that the plaintiff's medical needs subjected him to an excessive risk of harm; and (3) the officer knew that his failure to respond would pose a serious risk to the plaintiff and ignored that risk. *Trozzi v. Lake Cnty.*, 29 F.4th 745, 757–58 (6th Cir. 2022). To demonstrate the existence of the objective component, Shaffer must show "an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 368 (internal quotations omitted).

Shaffer's claim fails on all three elements. First, he fails to demonstrate the first, or objective component, of his claim. There is no evidence that he actually suffered any sort of

injury as a result of the events of which he complains, and he has provided no medical evidence demonstrating a serious medical condition. The sole document he provided defense counsel is of questionable origin and, even if it is a legitimate medical record, was generated months after the December 4, 2022 incident. (ECF No. 62-6.) As for the second element, there is no evidence that Deputy Gilman knew or understood that Shaffer's medical need subjected him to an excessive risk of harm. In fact, as the video clearly demonstrates, Deputy Gilman had first-hand experience with individuals who had suffered actual seizures and observed that Shaffer's behavior was inconsistent with seizure symptoms that he had previously observed. Finally, there is no evidence that Deputy Gilman ignored a substantial risk of harm. The evidence shows that the officers summoned an ambulance to the scene, and Deputy Gilman continued to observe Shaffer to ensure that he did not need emergency medical care. The video Defendants have presented clearly shows that Shaffer did not need such care. Finally, at the jail, Deputy Gilman informed jail officials about Shaffer's reported "seizures." Thus, Shaffer has failed to establish a deliberate indifference claim.

### 3. Kalamazoo County and Office of Administrator

Shaffer also listed Kalamazoo County and "Office of Administrator" as Defendants. First, regarding "Office of Administrator," Shaffer has failed to identify any individual who occupies this office or what this Defendant did to violate his rights. Thus, this Defendant should be dismissed. As for the County, dismissal is warranted because Shaffer fails to allege or present any evidence of a policy, practice, or custom of the County that caused a violation of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Moreover, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000)); *see also Przybysz v. City of Toledo*, 746 F. App'x 480, 484 (6th Cir. 2018) ("As a threshold matter, there

can be no municipal liability under *Monell* when there is no constitutional violation"). Thus, the County should also be dismissed.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion (ECF No. 62) pursuant to Rule 56 and/or Rules 37(b)(2) and 41(b) and **dismiss this action with prejudice**.

Dated: December 18, 2023                    /s/ Sally J. Berens
                                            SALLY J. BERENS
                                            U.S. Magistrate Judge

### NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).